A05A0541. IN THE INTEREST OF K. D. et al., children.
(613 SE2d 239)

BARNES, Judge.

While this case is filed under the initials of the four deprived children involved in the underlying juvenile court case, the appeal involves the trial court's sua sponte finding of contempt against an employee of the Department of Family and Children Services (DFACS). The employee, Penny Alderman, appeals the juvenile court's contempt order against her. She argues, among other things, that the order on which the court based its contempt finding had not been filed with the clerk of court when she took the allegedly contemptuous action. For the reasons that follow, we reverse the trial court.

On July 30, 2004, DFACS removed the three oldest children from their home and placed them in foster care. It then petitioned the juvenile court for temporary custody of these children, ages five, three, and eighteen months, alleging they were without proper parental care or control, and that both their father and their pregnant mother had tested positive for methamphetamine. The petition was amended to add the fourth child after he was born on August 2, 2004. The juvenile court held a hearing on Tuesday, August 10, 2004, the transcript of which is not included in the record before us. At that

---

[9] See *Simpson v. State*, 277 Ga. 356, 358-359 (4) (a) (589 SE2d 90) (2003).

hearing, apparently the children's mother wanted to relinquish custody to her mother, the children's grandmother, who lived in Texas. The attorney for DFACS testified later that he understood the hearing had been continued until a later date after further investigation was completed.

On Wednesday, August 11, 2004, the court signed an order naming a court-appointed special advocate (CASA) to represent the children's interests, although that order was not filed until August 26, 2004. On Friday morning, August 13, 2004, the CASA met with the judge ex parte to show him pictures e-mailed to her of the grandmother's Texas home. The trial court prepared an order that morning, transferring custody of all four children to the grandmother. In the order, the court noted that DFACS did not recommend the transfer because it had not yet sought to have Texas authorities perform a home evaluation, but ordered "that custody of the children be transferred to the maternal grandmother . . . until the children reach the age of eighteen or until further order of the court."

The judge signed the custody transfer order on Friday, August 13, 2004, although it was not filed with the clerk's office until the following Monday. The CASA called Alderman Friday morning at 10:00 or 10:30 a.m. to tell her that the juvenile court had transferred custody to the children's grandmother. The grandmother took the order to the DFACS office around 11:00 a.m. to retrieve the children. At that time, the children were in foster homes and one was in school. DFACS was prepared to release custody of the children, but the grandmother would not accept them without also acquiring the means to transport them to her home in Texas. She had no car seats for two of the four children (the newborn was sent home from the hospital with a car seat and another child had a booster seat), no money for gas, not enough room in her Jeep Wrangler for all of the children, and no money for food or shelter. At her home she had no baby bed and no day care plan. The grandmother had anticipated, based on her earlier conversations with the children's caseworker, that DFACS would help her transport the children, either by renting a van and furnishing gas money and car seats or by flying them to Texas.

Alderman, who is the social services administrator over foster care and resource development at DFACS, sent the grandmother to pack the children's belongings and began working on travel arrangements. She explained that she could not use state or federal money to transport the children because the order did not comply with the Interstate Compact on the Placement of Children (ICPC), OCGA § 39-4-4 et seq. She called several vehicle rental businesses, but none would accept an agency check. Instead, she would have had to use the agency credit card, list herself as the primary driver, and list the

grandmother as a secondary driver, leaving the department fully responsible for the vehicle which it was turning over to someone whose background had never been checked. She confirmed a rental van, however.

When the grandmother called in for a status report at 3:30 p.m., Alderman told her she could take custody of the children but that no funds were available to give her that afternoon. The grandmother said she had no gas money. She had checked out of her hotel and was considering going to a shelter for the evening, but would think about the offer to take the children then. When Alderman had not heard back from the grandmother by 4:20 p.m., she took emergency custody of the children again.

Meanwhile, that Friday afternoon, the CASA called Alderman to tell her she was to be in court the next Monday morning on August 16, 2004. She was never served with a copy of the court's order transferring custody and received no written notice of the Monday hearing. At the Monday hearing, the court called the CASA worker and the grandmother to the stand, and questioned them about the previous Friday's events, after which the DFACS attorney cross-examined them. Alderman then took the stand and explained her version of the events, after which the juvenile court directed the assistant district attorney present to prepare an order finding Alderman in contempt of his August 13, 2004 order. He further directed DFACS to turn the children over to the grandmother by 11:00 a.m. that day, and the juvenile court provided funds to the grandmother from the juvenile court so that she could transport the children to Texas.

While an assistant district attorney was only present at the first show-cause hearing, he participated fully in the court's second show-cause hearing on August 25, 2004, questioning the witnesses to try to establish that Alderman committed contempt of court. One of two CASA advocacy coordinators testified that she talked with Alderman several times on Friday when the juvenile court issued its order transferring custody, and that she thought Alderman was doing all she could to get the children and grandmother back to Texas. The other CASA advocacy coordinator testified that she talked to the judge Friday morning, and then gave the grandmother two copies of the juvenile court's order, one to keep and one to take to the DFACS office. The order was not file-stamped until Monday morning.

OCGA § 15-11-5 (a) provides that the juvenile court "may punish a person for contempt of court for willfully disobeying an order of the court or for obstructing or interfering with the proceedings of the court or the enforcement of its orders, subject to the law relating to the procedures therefor and the limitations thereon." The date the judgment was filed with the court clerk, not the date the trial judge signed the order, constitutes "entry" of the judgment. OCGA § 9-11-58 (b);

*Blanton v. Moseley*, 133 Ga. App. 144 (1) (210 SE2d 368) (1974). The scope of OCGA § 9-11-58 (b) has been extended beyond "judgments" to include orders of any kind. *In re Smith*, 211 Ga. App. 493, 495 (1) (439 SE2d 725) (1993).

Pretermitting Alderman's additional arguments, we reverse the trial court because the custody transfer order in this case was not filed with the clerk of court until Monday, August 16, 2004, after the actions on the previous Friday for which the court found Alderman in contempt.[1] Alderman cannot have committed contempt by failing to follow an order that was not yet filed with the clerk. The evidence of record establishes that the custody transfer order was not filed when Alderman allegedly violated it. Further, as a factual issue, the record established that Alderman offered to transfer the children to their grandmother on Friday, but the grandmother declined to take the children without also receiving money to transport and feed them, and Alderman could not give her financial assistance because the custody order drafted by the juvenile court did not comply with the ICPC. Given this evidence, no rational trier of fact could have found beyond a reasonable doubt that Alderman was guilty of contempt of court.

*Judgment reversed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED APRIL 13, 2005.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, John C. Shelton*, for appellant.

---

[1] Those additional arguments questioned whether the contempt order applied to Alderman individually, who is not a party to the deprivation proceeding, or to DFACS, which was a party to the proceeding; whether Alderman or DFACS had proper notice of the juvenile court's ex parte hearing with the CASA before the court signed the custody transfer order, as required by OCGA § 9-10-2; whether Alderman received a proper citation, notice, and hearing as required by the due process clause of the Georgia Constitution; whether the service of the show-cause order was defective under OCGA § 49-2-15 because the Commissioner was not personally served by second original; whether Alderman, as a nonparty, was subject to the juvenile court jurisdiction; and whether the State met its burden to establish guilt beyond a reasonable doubt, as required by a finding of criminal contempt that bestows punishment for prior acts of disobedience.