S06F2153. ECHOLS v. ECHOLS.
(640 SE2d 257)

SEARS, Chief Justice.

The appellant, Lisa Echols, appeals from the trial court's final judgment of divorce in an action filed against her by the appellee, Richard Echols. On appeal, Ms. Echols contends that the trial court erred in denying her motion to recuse the trial court and that the trial court erred in awarding Mr. Echols joint physical custody of the parties' minor child. Because we find no error, we affirm the trial court's judgment.

1. The parties' action was assigned to Judge Arch McGarity. On May 14, 2004, Ms. Echols filed a motion to recuse Judge McGarity. She alleged that Judge McGarity's long-time business and personal relationship with Mr. Echols's family prohibited Judge McGarity from being impartial in the case and that the perceived bias in favor of Mr. Echols had existed since the start of the litigation. In this regard, Ms. Echols stated that at the beginning of the litigation, Mr. Echols told Ms. Echols that his family had known Judge McGarity "forever," and that Judge McGarity had already decided to award custody of the child to Mr. Echols. Ms. Echols also alleged that Judge McGarity's bias had manifested itself in several of his actions. In this regard, she alleged that in a June 2003 temporary hearing, Judge McGarity impugned Ms. Echols's character by stating that the parties' minor child was conceived before marriage. Ms. Echols also alleged that in January 2004, Judge McGarity arranged a telephone call with the parties' attorneys in which he ordered Ms. Echols, for purposes of re-financing, to quitclaim her interest in the parties' home to Mr. Echols; that Judge McGarity stated that she should do so because Mr. Echols had a better relationship with the bank; that Judge McGarity could not have reached such a conclusion without

having received extra-judicial information from someone. Ms. Echols stated that, after the January 2004 ruling, she began to investigate Judge McGarity's relationship with Mr. Echols and his family; that she discovered that he had a business and personal relationship with Mr. Echols's father and that Mr. Echols's father had a business and personal relationship with Burke Walsh, the president of the bank that held the parties' mortgage. Finally, Ms. Echols alleged that, in an order filed May 6, 2004, Judge McGarity specially set the action for trial when discovery had not been completed; that this order demonstrated that Judge McGarity was biased against Ms. Echols; and that this order caused her to file her recusal motion.

On May 20, 2004, Judge McGarity denied the recusal motion on the ground that it was "untimely filed and/or legally insufficient as a matter of law."

(a) Ms. Echols contends that Judge McGarity erred in this ruling. For the reasons that follow, we disagree.

Under Uniform Superior Court Rule 25.1, a motion to recuse must be filed no "later than five (5) days after the affiant first learned of the alleged grounds for disqualification . . . unless good cause be shown for failure to meet such time requirements." Here, Ms. Echols's recusal motion is based on Judge McGarity's bias against her due to his close personal and business relationship with Mr. Echols's family. One of the allegations of bias allegedly occurred at the beginning of the litigation when Mr. Echols told Ms. Echols that his family had known Judge McGarity "forever" and that he would rule in his favor on custody. Moreover, Ms. Echols stated that she began to investigate the alleged close business and personal relationship between Judge McGarity and Mr. Echols's family in January 2004. Finally, Ms. Echols stated that the May 7, 2004, order specially setting the case for trial confirmed Judge McGarity's bias and caused her to file the recusal motion.

Arguably, Ms. Echols should have filed her recusal motion within five days of her conversation with Mr. Echols in 2003. Because the basis of the recusal motion is bias, and because that conversation alerted Ms. Echols to Judge McGarity's alleged bias, she should not have waited more than a year to file the present recusal motion. Moreover, Ms. Echols stated that in January 2004, she began to investigate the exact nature of Mr. Echols's family's relationship with Judge McGarity. Finally, because Ms. Echols stated that the May 7, 2004, order confirmed Judge McGarity's bias, prompting her to file the recusal motion with documentation of ties between Mr. Echols and Judge McGarity, the only reasonable inference is that Ms. Echols had completed all or a large part of her investigation and documentation before May 7. The fact that an affidavit submitted in support

of the recusal motion was dated April 9, 2004, supports this conclusion. Thus, it is clear the basis of the recusal motion — Judge McGarity's ties to Mr. Echols and his family — was known to Ms. Echols well before May 7, 2004. As Ms. Echols did not file her recusal motion until May 14, 2004, the motion was not filed within five days of her discovery of those ties.

Finally, we disagree with Ms. Echols that her motion was timely because the May 7 order occurred within five days of May 14, excluding Saturdays and Sundays.[1] The May 7 order itself is not the basis for Ms. Echols's motion; rather, Judge McGarity's allegedly close ties to the Echols family is the basis. Because that basis was known before May 7, the motion was not timely. In any event, the May 7 order is an insufficient basis for a recusal motion, as it is not an extra-judicial act that evidences bias.[2]

For the foregoing reasons, we conclude that the trial court correctly ruled that Ms. Echols's recusal motion was not timely filed.

(b) Moreover, because Ms. Echols was first alerted to Judge McGarity's alleged bias a year before she filed the recusal motion, and because other specific allegations of bias occurred in June 2003 and January 2004, we cannot conclude that Ms. Echols acted in good faith by waiting to file her motion until May 14, 2004.

2. Ms. Echols next contends that the trial court erred in awarding joint physical custody to Mr. Echols. We disagree.

After a two-day hearing, the trial court found that both parents are fit and capable to exercise custody, and that joint legal and physical custody was in the child's best interests. In a custody contest between parents, a trial court has very broad discretion in awarding custody, with the foremost consideration being the best interest of the child.[3] Moreover, this Court will not interfere with a trial court's exercise of that discretion except when there has been a clear abuse thereof.[4] In addition, "[i]t is not an abuse of discretion if there is any evidence to support the trial judge's decision of which party shall have custody."[5]

In the present case, there was some evidence militating against awarding custody to Mr. Echols. In this regard, there was evidence that he had two prior felony convictions, that he had committed

---

[1] See OCGA § 1-3-1 (d) (3) (when a statute prescribes a period of time of less than seven days for a filing, Saturdays and Sundays are excluded when calculating the due date).

[2] See USCR 25.2 ("The affidavit shall clearly state the facts and reasons for the belief that bias or prejudice exists, being definite and specific as to . . . circumstances of *extra-judicial* conduct or statements, which demonstrate either bias in favor of any adverse party, or prejudice toward the moving party in particular. . . .") (Emphasis supplied.)

[3] *Urquhart v. Urquhart*, 272 Ga. 548, 549 (533 SE2d 80) (2000).

[4] Id.

[5] *Cook v. Cook*, 280 Ga. 768, 768 (632 SE2d 664) (2006).

adultery, and that he had a violent temper. On the other hand, there was evidence supporting an award of joint physical custody to him, including testimony from his child's teachers that the child was progressing well socially and academically at school; that Mr. Echols has participated at his child's school and is concerned for how his child is progressing; and that Mr. Echols was a loving, kind, and gentle parent. Mr. Echols's mother also testified that Mr. Echols is a great father; that he is "totally concerned with every aspect of the child's life"; that he plays with the child; that he reads to him; and that he and the child have a "wonderful bond." In addition, Ms. Echols testified on cross that she believes that Mr. Echols loves his son; that the child is doing well in school; that Mr. Echols actively participates in the child's schooling; and that it was in the child's best interest for Mr. Echols to be an "active part" in the child's life. Finally, Mr. Echols's two felony convictions occurred in 1987 and 1988 while he was a college student, and he has had no convictions since that time.

Although the evidence is not without conflict, there is some evidence supporting the trial court's decision that it was in the child's best interest for Mr. Echols to have joint physical custody of his child. We thus cannot conclude that the trial court abused its discretion in awarding joint physical custody to him.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 22, 2007.

*Schulten, Ward & Turner, Erin S. Stone, Hadley M. Recor*, for appellant.

*Smith, Welch & Brittain, John P. Webb*, for appellee.