S07F0197. CHATFIELD v. ADKINS-CHATFIELD.
(646 SE2d 247)

HINES, Justice.

This is a dispute arising from a divorce filed in the Superior Court of Jones County on March 21, 2003, by Celeste Adkins-Chatfield ("wife") against Terry Chatfield ("husband"). The parties were married on March 21, 1998, and have three minor children. The case was tried before a jury August 4-5, 2005. Prior to trial, several motions for contempt were heard. The issues raised in this appeal arise out of an order of contempt entered on August 16, 2005, which involves an oral order given on August 5, 2005, and the final judgment and decree of divorce which was also entered on August 16, 2005.[1] For the reasons that follow, we affirm.

A chronology is necessary. On May 15, 2003, the wife filed a motion for contempt of a pre-trial ruling, and the husband failed to appear at the hearing in the matter. After hearing evidence, the trial court found the husband in contempt of an order requiring him to

---

[1] The husband filed an application for discretionary appeal in this Court, which was granted automatically under this Court's pilot project. See *Wright v. Wright*, 277 Ga. 133 (587 SE2d 600) (2003).

provide the wife with suitable transportation[2] and to reimburse her for expenses for restoring telephone service to the marital home;[3] the court ordered the husband, inter alia, to provide the wife, specifically, with a 2001 Chevrolet Tahoe. The husband failed to do this, and on June 3, 2003, the trial court issued an order for the husband's immediate incarceration; the husband was arrested on June 11, 2003. On June 23, 2003, the husband was released and he was ordered to appear before the court on July 11, 2003, to show whether he had complied with the court's order on the contempt. On July 11, 2003, after hearing testimony from both parties, the trial court determined that the wife had not found acceptable any of three vehicles that the husband had brought her. Consequently, on July 25, 2003, the court entered an order directing the husband to provide the wife with a 1999 Ford Expedition, titled in the wife's name, free and clear of all liens. The husband delivered the vehicle to the wife, but did not provide the title as ordered. Having failed to comply with the court's order, the husband was summoned back to court on December 4, 2003, to answer the wife's latest petition for contempt. On December 4, 2003, the trial court entered an order on this contempt petition incorporating a resolution reached by the parties which, in relevant part, ordered the husband to provide the wife with the title to the 1999 Ford Expedition by December 12, 2003. The written consent order entered by the trial court was signed by both the wife and the husband. On April 20, 2004, the husband's attorney was allowed to withdraw from representing him; the stated reason for the withdrawal was the husband's lack of cooperation and fulfillment of contractual obligations; the husband obtained new counsel. The husband continued to fail to provide the wife with proof of ownership of the Expedition, preventing her from obtaining a license tag or her own insurance for the vehicle.

On January 4, 2004, the vehicle was involved in a collision and declared a total loss. Subsequently, the husband still refused to provide the wife with title so that she could file a claim for the loss. Instead, the husband filed a claim for the loss, and insurance proceeds in the amount of $14,593 were paid to him as the owner. The husband did not provide the wife with substitute transportation. On January 7, 2005, the wife sought an order of contempt based, inter alia, upon the husband's actions with regard to the totaled vehicle.

---

[2] The husband had an interest in, among other enterprises, an automotive dealership, and the wife alleged that he had provided vehicles to at least three women with whom he was having extramarital affairs.

[3] It was alleged that the husband had telephone service disconnected in an effort to keep his girlfriends from contacting the wife.

During the jury trial of the divorce, the husband admitted that he did not deliver the vehicle's title or the insurance proceeds to the wife. Rather, he testified that he used the money to pay his credit card debt, which he alleged had been incurred in connection with financing the totaled vehicle. The trial court ruled that it was not within the province of the jury to decide whether a prior order of the court was enforceable. Consequently, the jury was instructed that any issue involving the Expedition and the insurance proceeds was outside its purview and was a matter for the court's determination. At the conclusion of the trial, on August 5, 2005, the jury awarded the wife, inter alia, $35,000 in lump-sum alimony. The court then issued an oral order stating that the husband owed the wife the $14,593 in insurance proceeds and directed the husband to pay it no later than August 10, 2005, five days from the conclusion of the trial. When the husband failed to comply with the order, the trial court commanded him to appear on August 11, 2005, to show cause why he should not be held in contempt.

On August 12, 2005, the husband was again held in contempt, and ordered orally that beginning that day, in addition to the $14,593, he was to pay the wife the additional sum of $1,500 for each day that passed until the $14,593 was paid, plus attorney fees of $1,500. Subsequently, the court issued a written order on August 16, 2005, nunc pro tunc to August 12, 2005, memorializing its oral directive.[4]

1. The husband contends that the evidence was insufficient to support his being found in contempt by the August 16, 2005 order because the evidence did not show that he willfully and intentionally violated a lawful court order inasmuch as the order directing him to pay the $14,593 in insurance proceeds by August 10, 2005 was oral, and thus, ineffective as a matter of law. However, the argument is unavailing. The husband was well aware during the trial that the payment of the $14,593, which represented the value of the vehicle he was required to transfer to his wife, was at issue, and that it would be a matter decided by the trial court without the intervention of the jury.[5] Even more significantly, the argument relies upon the husband's complete and convenient disregard of the existence of the earlier written consent order obligating him to provide his wife with the 1999 Ford Expedition and its title, and his continuing failure to

---

[4] This order also stated that the husband sought to appeal the December 4, 2003 order, and had moved the court to order the $14,593 to be paid into the registry of the court pending the outcome of an appeal; the court directed that the money be paid into the court registry.

[5] In fact, the trial court noted in its August 16, 2005 order, nunc pro tunc to August 12, 2005, that in an effort to resolve the matter it had suggested that the husband pay the $14,593 to the wife to be offset against the lump-sum alimony award in the event that an appeal of the December 4, 2003 order was successful.

do so. Under these circumstances, the finding of contempt was authorized.[6] *Leary v. Julian*, 225 Ga. App. 472, 474 (2) (484 SE2d 75) (1997).

2. For the reasons outlined in Division 1, there is no merit to the husband's assertion that imposing the payment of $1,500 per day exceeded the power of the trial court because there was no lawful order in place requiring him to pay the $14,593.

There is likewise no merit to the husband's claim that the ordered payment of $1,500 per day is contrary to OCGA § 15-6-8 (5). Indeed, OCGA § 15-6-8 (5) provides that the superior courts have the authority to punish contemptuous behavior by imposing fines not to exceed $500; however, this monetary limitation addresses the circumstance of criminal contempt and is not applicable to sanctions imposed for civil contempt. *Minor v. Minor*, 257 Ga. 706, 710 (3) (362 SE2d 208) (1987); *In re Harvey*, 219 Ga. App. 76, 79 (464 SE2d 34) (1995). And this is plainly a situation of civil contempt inasmuch as the sanction employed by the trial court was entirely remedial in nature. Id. See also *Alexander v. DeKalb County*, 264 Ga. 362, 364 (1) (444 SE2d 743) (1994); *Ensley v. Ensley*, 239 Ga. 860 (238 SE2d 920) (1977).

Finally, the record completely belies the husband's additional assertion that ordering the daily payment was an abuse of discretion. The dissent labels the trial court's imposition of the $1,500 per day as "coercive" and "excessive under the circumstances" because there were less "draconian" options available and because the payments would constitute "an inappropriate windfall" for the wife. But, that is far from the case. In fact, the record of the husband's consistent disregard of court orders and blatantly contemptuous behavior compels the conclusion that the trial court had little other option than to make it potentially costly for the husband to refuse to pay the wife the $14,593 in insurance proceeds, which represented the value of the vehicle awarded to the wife and to which the husband had agreed to furnish title.

The trial court was all too familiar with the husband's pattern of misconduct and the fact that punishment by imprisonment had not worked to make him comply with court orders.[7] The trial court was

---

[6] Our analysis renders it unnecessary to address the husband's additional complaint that his due process rights, specifically the right to file a discretionary appeal, was abridged by the trial court because no written order was ever issued pertaining to the oral order of August 5, 2005.

[7] In its order of August 16, 2005, nunc pro tunc to August 12, 2005, the trial court expressly found that "[e]vidence contained in the file and brought forth at trial illustrates that the [husband] does not object to being incarcerated. However, the [husband] did testify that he, 'knows the value of money,'" and that "it is clear that incarceration will not persuade the [husband] to comply."

also well aware that the husband had the ability to pay the $14,593 which he had received in insurance proceeds to the wife, but merely sought to avoid doing so. The husband was obligated to provide the wife with a specific vehicle and its title, and this he never did. So, the wife was left with neither transportation nor the monetary means to replace the wrecked vehicle. It can hardly be said that the trial court's order would result in a "windfall" for the wife; its sole aim was remedial and to implement what was legally awarded to the wife. The only "windfall" that is evident is that which the husband received when he took the $14,593 in insurance proceeds which represented the value of the vehicle awarded to the wife and put the money to his own use.

But, what completely belies the argument that the ordered daily payment was too harsh, and therefore, an abuse of the trial court's discretion is the indisputable fact that the husband could avoid the daily payment altogether by merely complying with his obligation to pay to the wife the insurance proceeds he had wrongfully received. Simply put, the husband would not have to pay a penny of the $1,500 per day if he finally chose to make the court-ordered $14,593 payment to the wife. The only abuse that can be found is the husband's continued attempts to avoid his lawful obligations to the wife.

3. The husband next contends that the trial court violated his constitutional right to due process in that he had no notice that the issue of his contempt for failing to pay the $14,593 would be before the court during the trial of the divorce, and that OCGA § 9-11-60[8] mandates that he be afforded reasonable notice on all motions. However, it does not appear that the husband's failure to pay such money was then before the court by motion of the wife; rather it was raised sua sponte. A trial court may sua sponte raise an issue of contempt. See *In re K. D.*, 272 Ga. App. 803 (613 SE2d 239) (2005). Furthermore, for the reasons already discussed, the additional argument of error in this regard contending the lack of a lawful order is without merit. See Divisions 1 and 2, supra.

4. The husband also asserts that the trial court erred because the required payment of $14,593 is contrary to the jury verdict in that the trial court refused to inform the jury prior to deliberation that it would award such amount. However, that is far from the case. The husband testified before the jury that he used this amount of the insurance proceeds to pay his credit card debt, and the trial court instructed the jury that it would decide any issue involving the

---

[8] OCGA § 9-11-60 (f) provides in relevant part:
Reasonable notice shall be afforded the parties on all motions.

Expedition and the insurance proceeds. Therefore, the jury knew that the award of such money to the wife was possible, if not probable.

5. Although the husband states that he is not appealing the December 4, 2003 order, he asserts that it and "related orders" are void as a matter of law in that the requirement that he transfer to the wife the 1999 Ford Expedition free of all liens and with good title was an equitable division of property which should not have occurred at a temporary hearing. However, he consented to provide the vehicle in order to resolve the contempt proceeding. And there is plainly no merit to his further claim that the consent order was unconscionable.

6. Lastly, the husband's assertion that the trial court abused its discretion in granting physical custody of the parties' minor children to the wife does not prevail.

> In a custody contest between parents, a trial court has very broad discretion in awarding custody, with the foremost consideration being the best interest of the child. Moreover, this Court will not interfere with a trial court's exercise of that discretion except when there has been a clear abuse thereof. In addition, [i]t is not an abuse of discretion if there is any evidence to support the trial judge's decision of which party shall have custody.

(Punctuation omitted.) *Echols v. Echols*, 281 Ga. 546, 548 (640 SE2d 257) (2007). There is ample evidence of record to support the custody award.

*Judgment affirmed. All the Justices concur, except Benham, J., who dissents in part.*


BENHAM, Justice, dissenting in part.

Although I agree with the rest of the majority opinion, I cannot concur with Division 2 of that opinion because I believe the trial court abused its discretion in ordering Chatfield (Husband) to pay Adkins-Chatfield (Wife) $1,500 for each day that passes before he pays to her the sum of $14,593. While the evidence of willful disobedience of the trial court's order to pay that sum was sufficient to support the trial court's exercise of discretion in holding Husband in contempt, I believe the extent of the coercive efforts by the trial court was excessive under the circumstances of this case for two reasons: because there were less draconian options available and because the payment of such sums to Wife would constitute an inappropriate windfall.

The original obligation imposed on Husband was to provide Wife with transportation. Thus, since the obligation was one of support ordered to be provided from one party's estate, it amounted to

alimony. "Alimony is an allowance out of one party's estate, made for the support of the other party when living separately. It is either temporary or permanent." OCGA § 19-6-1 (a). An alimony obligation can be enforced, like other judgments for money, by writ of fieri facias (OCGA §§ 19-6-3 (d) and 19-6-4 (b)), so Wife could enforce that judgment by ordinary post-judgment collection efforts which would be as productive of results for Wife and much less disruptive and costly for Husband.

The obligation at the heart of this matter was to provide transportation to Wife. The jury's verdict, incorporated into the divorce decree, specifically awarded Wife, as part of the division of property, a particular vehicle, so the need for which the original obligation was intended to provide has been met. Thus, Wife's need for transportation has been met and the trial court has additionally imposed a cash award of $14,593. That being so, the trial court's imposition of additional indebtedness of $1,500 for every day the original obligation is not met is a windfall for Wife, not intended to meet any need and not necessary to balance the parties' ownership of marital property.

While I recognize and value the importance of trial courts having means available to ensure compliance with their judgments, there must be practical limits to the power wielded in that effort. Where, as here, less destructive means exist and the coercive method chosen results in a windfall that unbalances what a jury sought to balance in terms of the parties' relative ownership of marital assets, a trial court abuses its discretion by choosing so draconian a measure. Because the trial court abused its discretion, I would vacate the order requiring Husband to pay $1,500 for every day of delay in paying the existing obligation. Because the majority opinion does not recognize that abuse of discretion, I must respectfully dissent.

DECIDED JUNE 4, 2007 —
RECONSIDERATION DENIED JUNE 25, 2007.

*Veronica E. Brinson*, for appellant.
*Lewis J. Patterson*, for appellee.