## A09A0219. IN RE HARRIS.

(682 SE2d 196)

ANDREWS, Presiding Judge.

Robyn Pressley Harris appeals a juvenile court's orders finding her in contempt of court, arguing that the evidence was insufficient.[1] We affirm.

The record shows that at a hearing on June 26, 2008, the juvenile court was considering a protective order submitted by the Department of Family and Children Services (DFCS) and including provisions that Harris "shall make herself available to the Department no less than twice per month" and that she "shall cooperate with the Department." At the close of evidence, DFCS asked the juvenile court "to order the mother to do everything asked [for] in the protective order." The juvenile court immediately granted "all the requests required by DFCS." The court continued:

> [I am] [g]oing to require her to submit to a hair follicle test today. I require DFCS to advance the funds but I require the mother to reimburse DFCS at the rate of — ... $50 per month till it's reimbursed in full. I'm going to require DFCS to make a home visit today to see what the status of the issue concerning the home is to make sure we know exactly what is going on concerning home — I mean, her home and where she's living. *I'll require DFCS to contact to get all the*

---

[1] We do not address Harris's enumeration of error concerning the trial court's finding that her children were deprived because it was the subject of a separate appeal in Case No. A09A0217, which was dismissed.

*information of where these children are located, addresses, telephone numbers, and people that are responsible.* I'm going to require *you* to contact them today or tomorrow to find out what the status of these children are and what means of support they are receiving and what type of educational programs they are receiving this summer, if any. . . . That's the order of the Court.

(Emphasis supplied.)

Even assuming that the court's last-quoted requirement was addressed to the DFCS representative rather than Harris, the record, construed in favor of the juvenile court's judgment, shows that Harris was under an obligation to cooperate with DFCS concerning the location of her children from the moment the trial court issued its order.

At the subsequent hearing on July 10, 2008, after Harris stated that she had not provided some information to DFCS because she did not want other people involved, the following transpired:

> THE COURT: Did you understand what the court order was?
> MS. HARRIS: (Unintelligible)
> THE COURT: No, ma'am. Listen. Don't interrupt. The court order was for you to provide the information. Why didn't you provide the information?
> MS. HARRIS: I did not want them to contact the people my children were (unintelligible) with.

Harris's counsel explained that the children were with their mother "back in the home to avoid having other persons involved with this case so that she can — that the Department can have access to the children." The Court responded:

> That's not what the Court ordered to be done. She doesn't have the discretion of saying I don't want somebody else to know. When the Court has ordered her to do something she has to do it. Do you understand that, ma'am?

Counsel responded, "I do, Your Honor."

The DFCS representative later reported to the court that Harris had given "the names and the cities," but no addresses or telephone numbers at the location where the children had been staying part time. He did not know if Harris knew the information or not. The court directed Harris to provide her contact number for one of the

fathers, and the following exchange took place:

> MS. HARRIS: I don't have [the phone number for contact-
> ing one of the fathers] with me.
> THE COURT: Place — I find her in willful contempt of the
> Court. Place her in the common jail of Henry County for 20
> days *or until all information is given that has been re-
> quested*. Take her into custody.
> [COUNSEL]: Your Honor —
> THE COURT: No, ma'am. Take her into custody.

(Emphasis supplied.)

Later in the hearing, a DFCS representative said that she did not understand the problem because she had spoken with the children and was astounded that Mrs. Harris would claim that she did not know the fathers' addresses because they were all in the local area and the children spent a lot of time with their fathers. The court responded:

> I understand completely. This is a game they are playing. It
> is over with. She's been found in willful contempt of the
> Court's order. She's given 20 days in jail and that's where
> she is. She can purge herself of the contempt by providing
> all of the information that is requested. That's the order of
> the Court. Get me an order.

The court's written judgment reiterated that Harris was in "willful contempt" of the June 26 protective order as well as the Court's "verbal order" of July 10, sentenced her to 20 days in jail, and noted that she might purge herself of her contempt "by providing the Department with all of the information requested by the Department, including but not limited to, all contact information for each of the children's fathers."

"The distinction between [criminal and civil contempt] is that criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order." (Citation omitted.) *Alexander v. DeKalb County*, 264 Ga. 362, 364 (444 SE2d 743) (1994). Because Harris could obtain her freedom from imprisonment and purge herself of the contempt by providing the information that had been requested of her, we consider whether the evidence sufficed to hold Harris in civil contempt.

At this July 10 hearing, neither Harris nor her counsel ever asserted ignorance of the content of the June 26 order, including its provisions that she cooperate with DFCS. On the contrary, Harris

admitted that she did not comply because "[she] did not want [DFCS] to contact the people" her children were staying with. As such, the record supports a determination that the juvenile court did not abuse its discretion when it found Harris in contempt for disobeying its prior order. See *Chatfield v. Adkins-Chatfield*, 282 Ga. 190, 192-193 (1) (646 SE2d 247) (2007) (finding no abuse of discretion in civil contempt finding where the record showed that a party disobeyed the trial court's oral order).

Judgment affirmed. *Miller, C. J., Blackburn, P. J., Ellington and Mikell, JJ., concur. Johnson, P. J., and Barnes, J., dissent.*

BARNES, Judge, dissenting.

Because the juvenile court did not explicitly order Harris to give contact information to DFCS, she did not violate the court's order by not doing so before the hearing at which she was held in contempt. The evidence also shows that Harris did not refuse to cooperate, but thought that she would satisfy the court if she gave DFCS access to the children by bringing them back to live with her. Finally, Harris did not act in contempt by failing to bring contact information to the hearing and being unable to provide it to DFCS in court. Accordingly, I cannot concur with the majority affirming the finding of contempt against Harris.

" 'The defenses to both civil and criminal contempt are that the order was not sufficiently definite and certain, was not violated, or that the violation was not wilful (e.g., inability to pay or comply).' *Schiselman v. Trust Co. Bank*, 246 Ga. 274, 277 (271 SE2d 183) (1980)." *Warehouse Carpet Sales &c. v. S. C. J. Assocs.*, 170 Ga. App. 352, 353 (317 SE2d 328) (1984). Here, the juvenile court found Harris in contempt for violating both the court's June 26, 2008 order and its July 10, 2008 protective order. But the court's June 26 oral order simply granted DFCS "all the requests required" by the department in its pre-hearing petition, in which DFCS sought to require Harris to cooperate with it, among other things. Additionally, the court required *DFCS* to take certain actions as follows:

> I'm going to require *DFCS* to make a home visit today to see what the status of the issue concerning the home is to make sure we know exactly what is going on concerning home — I mean, her home and where she's living. I'll *require DFCS* to contact to get all the information of where these children are located, addresses, telephone numbers, and people that are responsible. I'm going to require *you* to contact them today or tomorrow to find out what the status of these children are and what means of support they are receiving and what type of educational programs they are receiving

> this summer, if any. Now she says she's picking up the two boys three days a week. I want to know who is looking after these children the other days and what type of supervision they have. Anything else?
>
> [DFCS REPRESENTATIVE]: That's it, Judge.

(Emphasis supplied.) The "you" who was directed to contact the people responsible for caring for the children seems to be the DFCS representative, not Harris, and is at best ambiguous. Thus, Harris was explicitly ordered only to cooperate, and should be given the benefit of the doubt absent express directives.

While the majority contends that Harris violated the June 26 order by failing to cooperate with DFCS, the record shows that the juvenile court did not find her in contempt on July 10, 2008, for failing to cooperate. It found her in contempt for failing to supply contact information. " 'A person cannot be found in contempt of a court order or writ which was not directed to him.' " *In re Hadaway*, 290 Ga. App. 453, 457 (659 SE2d 863) (2008).

The senior assistant attorney general (SAAG) who had been present at the June 26 hearing was not present at the July 10 hearing. Another attorney was "covering" for her, and stated that it was his understanding that the Court had initiated the hearing after receiving a letter from the DFCS case manager who said Harris had not supplied contact information for all of her children. The juvenile court asked the substitute attorney if the department had everything it wanted. He replied no. The court asked Harris's lawyer for the information, and when she began to explain, cut her off and asked the case manager what information she needed. The manager said she needed information on one of the children, and the court asked Harris where the child was. Harris replied that the child was now residing with her, and when the court asked why she had not given the manager contact information initially Harris began to explain. The court cut her off again.

> THE COURT: Did you understand what the court order was?
>
> MRS. HARRIS: (Unintelligible.)
>
> THE COURT: No, ma'am. Listen. Don't interrupt. The order was for you to provide the information. Why didn't you provide the information?
>
> MRS. HARRIS: I did not want them to contact the people my children were (unintelligible) with.

Harris's attorney explained that there was a possibility that one of

the fathers would injure Harris or the children if he were aware of the DFCS investigation, and that she had discussed the issue with the previous SAAG. She continued:

> But the children are now residing back in the home to avoid having other persons involved with this case so that she can — that the Department can have access to the children.
>
> THE COURT: That's not what the Court ordered to be done. She doesn't have the discretion of saying I don't want somebody else to know. When the Court has ordered her to do something she has to do it. Do you understand that, ma'am?
>
> HARRIS' ATTORNEY: I do, Your Honor.

Harris' attorney reiterated that they had talked to the previous SAAG about not contacting this particular father, and the SAAG "had no problem" and "didn't persist further about contacting the father." When asked, the substitute SAAG did not know anything about this agreement, nor did the DFCS manager.

Harris testified that when the manager came for a home visit and sought information on the two of four children who were not home at that time, Harris responded that she would not feel comfortable about DFCS contacting the children's fathers because they would use the information against her. Harris said she offered to bring the children back home instead, and the manager said, "Okay, I will deal with that when I get back off of vacation. I will talk to my supervisor about it." So, Harris said, she "was under the impression that [DFCS] just needed to have . . . access to the children." The court responded:

> THE COURT: No one has the right to change a court order except the Judge and you are responsible for complying with the order, period.
>
> MRS. HARRIS: Sir, I did not understand that. I honestly did not understand that.
>
> THE COURT: Ignorance of the law is no excuse. Have a seat outside, interview the children, find out exactly what is going on, and then we'll deal with this.

While "ignorance of the law" is not an excuse in most instances, when one is found guilty of contempt for *willfully* violating the court's order, ignorance of the order is a defense. Here, the trial court's ambiguous order orally granted the Department's petition to require Harris to cooperate with DFCS. Harris testified that she

believed she was cooperating with them by bringing all her children back to live with her so that the Department had access to them.

"The appropriate standard of proof in a civil contempt case is preponderance of the evidence," *In re Harvey*, 219 Ga. App. 76 (464 SE2d 34) (1995), and here, no evidence supports the conclusion that Mrs. Harris willfully violated the court's order directing her to cooperate with DFCS.

After a delay during the July 10 hearing, the substitute SAAG reported to the court that one of the children's fathers was incarcerated; Harris had provided the address but not telephone number of the father of two of the children, who apparently had no contact with them; and Harris provided only the name and city of the father of the fourth child. Harris explained that she had to contact that father's mother to get in touch with him, and the court ordered Harris to provide that phone number, despite her attorney's protestation that contacting him might be a threat to the mother and child. The following exchange then took place:

> MRS. HARRIS: I don't have [the phone number for contacting one of the fathers] with me.
> THE COURT: Place — I find her in willful contempt of the court. Place her in the common jail of Henry County for 20 days or until all information is given that has been requested. Take her into custody.
> HARRIS' ATTORNEY: Your Honor —
> THE COURT: No, ma'am. Take her into custody.
> HARRIS' ATTORNEY: How will she be able to get this information, Your Honor, if she is incarcerated?
> THE COURT: That is up to you to help her. You are her lawyer, you can figure that one out. I have given ya'll all this time to do that, to provide the information, she's under a court order to do it, she's going to do it, it's that simple.
> HARRIS' ATTORNEY: Your Honor —
> THE COURT: Excuse me. And then I'm going to handle the issue of when and where the Department can use it. But this idea of playing games with the Court is not going to happen. You can make arrangements to talk to your client sometime. They can tell you how you can get to her at the jail.
> HARRIS' ATTORNEY: Your Honor, if I may put it on the record.
> THE COURT: Sure.
> HARRIS' ATTORNEY: Prior to us returning back in here you indicated and informed the opposing party that they must contact Michell Clark, the actual SAAG in this case,

regarding having information with the father. And [Mrs. Harris] was not told that she needs to provide that information with the father's number or the father's mother's number prior to leaving. The phone number for that is at her home and that's unreasonable in my opinion for her to have that information at this juncture. When she talked to DFCS on the 26th, the last time we were in court, she explained to them that she didn't want the father involved and she didn't want anybody else involved and the DFCS worker said that that would be no problem, she would contact her thereafter. And thereafter would have been this week. And I understand that explanation is somewhat trying to [controvert] the court order but at this juncture prior to leaving we were not — she was not informed that she needed to have that information at this point. You could give her a time line, maybe two days, three o'clock today to get that information and at that point if she has not gotten it then she would be held in contempt.

THE COURT: . . . She's been found in willful contempt of the court's order. She's given 20 days in jail and that's where she is. She can purge herself of the contempt by providing all of the information that is requested. That's the order of the court. Get me an order.

The juvenile court's written order states that the court found Mrs. Harris in contempt of the court's orders of June 26, 2008, and of July 10, 2008.

As noted, however, the order of June 26, 2008, however, directed *DFCS* to secure the information. It did not order Mrs. Harris to provide it, but only ordered her to cooperate with DFCS. Further, contrary to the majority's conclusion, the transcript quoted above shows that the juvenile court did not find Harris in contempt for failing to cooperate with DFCS. The juvenile court's comments show that the court believed that it had ordered Mrs. Harris to provide the information and that she had violated the order by failing to do so.

Moreover, even though the court's protective order entered July 10, 2008, allegedly "relating back to the date of oral pronouncement on June 26, 2008," does order Mrs. Harris to "provide the Department with the contact information for the children, including address and phone number [sic] where the children are residing for the summer," she could not violate this order before it was actually issued and filed with the clerk.[2] *In the Interest of K. D.*, 272 Ga. App.

---

[2] "A nunc pro tunc entry is for the purpose of recording some action that was taken or

803, 806 (613 SE2d 239) (2005).

Therefore, I conclude that the juvenile court erred by finding Mrs. Harris in contempt. See *In re Hadaway*, supra, 290 Ga. App. at 457; *American Express Co. v. Baker*, 192 Ga. App. 21, 23 (2) (383 SE2d 576) (1989).

Accordingly, as I would reverse Mrs. Harris's civil contempt citation, I respectfully dissent from the majority opinion.

I am authorized to state that Presiding Judge Johnson joins in this dissent.

DECIDED JULY 16, 2009.

*Ella Alis Salaam Hughes*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General*, for appellee.

---

*judgment rendered previously to the making of the entry*, which is to take effect as of the former date. Such an entry cannot be made to serve the office of correcting a decision however erroneous, or *of supplying non-action on the part of the court*." (Emphasis supplied.) *Pendergrass v. Duke*, 147 Ga. 10, 11 (2) (92 SE 649) (1917).