**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**April 1, 2020**

# In the Court of Appeals of Georgia

A20A0562. SAMNICK v. GOODMAN.

BARNES, Presiding Judge.

This is a divorce action between Yaacova I. Goodman and David R. Samnick in which Goodman filed a motion to disqualify Samnick's lawyer, Miles W. Rich, on the grounds that Rich had an attorney-client and social relationship with Goodman that created a conflict of interest and made him a necessary witness in the case. The trial court granted Goodman's motion to disqualify Rich but also granted Samnick a certificate of immediate review. Samnick then filed an application for interlocutory appeal, which this Court granted, resulting in the present appeal in which he challenges the disqualification of his counsel in the divorce proceedings. For the reasons discussed below, we discern no abuse of discretion by the trial court and affirm.

"The ultimate determination of whether an attorney should be disqualified from representing a client in a judicial proceeding rests in the sound discretion of the trial judge. This Court will not interfere with a trial court's ruling absent abuse of that discretion." (Citation and punctuation omitted.) *Befekadu v. Addis Intl. Money Transfer*, 339 Ga. App. 806, 807 (1) (795 SE2d 76) (2016). In ruling on a motion to disqualify counsel, the trial court sits as the trier of fact, resolving conflicts in the evidence and assessing witness credibility. See *WellStar Health System v. Kemp*, 324 Ga. App. 629, 635 (1) (b) (751 SE2d 445) (2013).

Mindful of these principles, we turn to the record in the present case, which reflects that Goodman and Samnick were married in December 2016 but later separated. They have no children together, but both of them had children from previous marriages.

At the center of the dispute in this appeal is Goodman's relationship with Rich, an attorney licensed to practice in Georgia who sought to represent Samnick in the pending divorce proceedings. Goodman and Samnick knew Rich before they were married. Rich had been Samnick's personal attorney for many years, representing him in family law and business matters. Goodman met Rich in August 2016 when she agreed to pay him to represent Samnick's son in a criminal case.

According to Goodman, she subsequently developed a personal friendship with Rich and Rich's wife, and she also sought advice from Rich about legal matters on several occasions. In late September 2016, a few months before Goodman and Samnick married, Goodman asked Rich for his advice regarding a dispute she was having with her former employer. Goodman was concerned that her former employer would not pay her the full commission that she was owed on her last sale with the company, and she sent an email to Rich that read in pertinent part:

> I hope you are well. I am having an issue with my previous employer paying my final commission check. According to our compensation plan, they have 60 days to pay my final check. Today was the end of the 60 days and they have not paid me. It has been one excuse after another. They are now telling me it will be a few more days. They are withholding about $80,000 and could be more, depending on how you read the plan. What would your fee be to review the documents and write them a letter? I think they need a nudge to get this resolved.

Rich responded by email:

> Yaacova. Sure, I will be glad to look at it. Please also send me a detailed explanation of how you determined what they owe you. Is the company located in Georgia? Does the employment contract specify you have to sue them in their jurisdiction or does it have an arbitration clause? Because it is commissions, it may not be subject to wage and hour laws, and usually these contracts have jurisdiction restrictions as well as

3

binding arbitration clauses. I am not an employment law expert. And we are talking about a lot of money. I will be glad to give you an opinion, and then we can decide how to proceed or go to an employment litigation attorney. Also, you said they are telling you. Are they telling you in writing or verbally. If verbally, I would call them and leave a message, in other words, get them to call you back, and then record the call, as we are a one party state and you can surreptitiously record them and then use it in court. We can discuss this later. . . .

Goodman thereafter forwarded to Rich several emails from her former employer that pertained to the commission issue, as well as a copy of her commission plan and the contract that she "sold" to her final customer under the plan. In the email forwarding the documents to Rich, Goodman answered some of Rich's questions about her employment and stated that she "would welcome [his] advice" about how to handle the matter. According to Goodman, as part of her consultation with Rich about the commission issue, she shared detailed, confidential information about her earnings and employment and sent him a copy of her employment contract, and she discussed with him whether writing a letter to her former employer would be the appropriate course of action. In an October 2016 email to Goodman, Rich stated that he had looked at the documents that Goodman sent to him, and he asked several follow-up questions regarding the calculation of the commission and agreed to write

4

a letter to her former employer, but stated that he was leaving town and would need to write the letter when he returned. Rich, however, never wrote the letter.

Before and during Goodman and Samnick's marriage, Rich and Rich's wife attended social gatherings at their home and went out to dinner with them. Goodman and Samnick also spent time on Rich's houseboat on several occasions. Additionally, Rich invited Goodman and Samnick to a religious gathering for Rich's late father. According to Goodman, she considered Rich a family friend, and she confided in him information about her marriage and Samnick, and Rich warned her that Samnick had a problem with fidelity. Also, during the marriage, Goodman asked Rich about the possibility of filing an action against her ex-husband for a modification of child support and of pursuing a personal injury action against a hotel for an injury sustained by her son on a trip abroad, and she testified that Rich provided her with advice regarding how to address those issues.

Goodman filed a petition for divorce in December 2018, seeking an equitable division of the marital property and debts and an award of attorney fees. Samnick, represented by Rich, filed an answer and counterclaim for divorce and an award of attorney fees under OCGA § 19-6-2. In his answer, Samnick asserted that Goodman was employed in the information technology sector and earned in excess of $500,000

annually, and in a supplemental filing, he indicated that he sought alimony from Goodman based on her current earnings.[1]

Goodman filed a motion to disqualify Rich from representing Samnick, contending that she had a former attorney-client relationship with Rich with respect to various matters that were substantially related to the divorce and had not consented to Rich representing Samnick in the divorce proceedings. She also contended that Rich was a necessary and material witness because of his social relationship with the parties and his observations and conversations with them that occurred over several years. Samnick opposed the motion, denying that an attorney-client relationship had ever formed between Goodman and Rich or that Rich had been privy to any information that would make him a necessary witness. Samnick submitted the affidavit of Rich in support of his position.[2]

---

[1] Goodman's counsel referred to Samnick's supplemental filing during the hearing on the disqualification motion and noted that Samnick had made clear in the filing that he sought alimony, but the filing was not included in the appellate record. In its order disqualifying Rich, the trial court found that the record reflected that alimony was one of the issues to be resolved in this case. In light of the incomplete record, we must presume that the trial court's determination that alimony was at issue in the case was correct. See *Krayev v. Johnson*, 327 Ga. App. 213, 222 (2) (757 SE2d 872) (2014).

[2] The parties also filed cross-motions for contempt. Those motions remained pending before the trial court when it entered its ruling on the disqualification motion

The trial court conducted a two-day hearing on the disqualification motion. Goodman testified to events as set out above and introduced emails reflecting communications between her and Rich and documents she submitted to him about the commission issue. Samnick and Rich's wife also testified at the hearing in opposition to disqualification. Additionally, the parties agreed that the trial court could consider Rich's affidavit submitted in opposition to the disqualification motion.

Following the hearing, the trial court entered its order disqualifying Rich from representing Samnick in the divorce proceedings, citing to, among other things, Rules 1.7 (a),[3] 1.9 (a),[4] and 3.7 (a)[5] of the Georgia Rules of Professional Conduct, found in

and are not addressed in this appeal.

[3] State Bar Rule 1.7 (a) provides: "A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b) [addressing obtaining informed consent from the affected client]."

[4] State Bar Rule 1.9 (a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former gives informed consent, confirmed in writing."

[5] State Bar Rule 3.7 (a) provides: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of

7

Bar Rule 4-102 (d) (the "State Bar Rules"). The trial court determined that "[a]lthough [Goodman] presented several other instances in which she may have received legal advice from Mr. Rich," it was clear from the evidence that Rich formed an attorney-client relationship with her for purposes of addressing her commission issue with her former employer, and that as part of the representation, Goodman provided Rich with detailed information about her commission structure and thus her earning capacity. The trial court noted that the issues to be resolved in the divorce included alimony and equitable division of property and debt, and that information about Goodman's earning capacity would inform the court's determination of those issues. Hence, the trial court concluded that there was a substantial relationship between matters involved in Rich's prior representation of Goodman and the divorce proceedings, and that Rich's knowledge of Goodman's earning capacity was likely to be used against Goodman in the trial of the case. The trial court also concluded that Rich was a necessary witness based on knowledge he had gained from his social relationship with Goodman and Samnick.

---

legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."

1. Samnick contends that the trial court erred in disqualifying Rich from representing him in the divorce proceedings based on the court's conclusion that Rich represented Goodman in her commission dispute with her former employer and that matters involved in the previous representation and the divorce action were substantially related.

It is a "long-standing rule [under Georgia law] that a lawyer is disqualified from representing a party against a former client in a matter that is 'substantially related' to the lawyer's prior representation." *Crawford W. Long Memorial Hosp. of Emory Univ. v. Yerby*, 258 Ga. 720, 721 (1) (373 SE2d 749) (1988). See State Bar Rule 1.9 (a); *Rescigno v. Vesali*, 306 Ga. App. 610, 612 (1) (703 SE2d 65) (2010). While there is an exception to this rule where the lawyer obtains the informed written consent to the representation from the former client, see State Bar Rule 1.9 (a), it is undisputed that Goodman did not provide written consent for Rich to represent Samnick in the divorce proceedings.

In determining whether disqualification is warranted, courts must remain cognizant that

> [t]he right to counsel is an important interest which requires that any
> curtailment of the client's right to counsel of choice be approached with

9

great caution. In determining whether to disqualify counsel, the trial court should consider the particular facts of the case, balancing the need to ensure ethical conduct on the part of lawyers against the litigant's right to freely chosen counsel.

(Citation and punctuation omitted.) *Befekadu v. Addis Int. Money Transfer*, 332 Ga. App. 103, 106 (1) (c) (772 SE2d 785) (2015). "Because of the right involved and the hardships brought about, disqualification of chosen counsel should be seen as an extraordinary remedy and should be granted sparingly." (Citations and punctuation omitted.) *Bernocchi v. Forcucci*, 279 Ga. 460, 462 (2) (614 SE2d 775) (2005). But, as previously noted, the decision over whether to disqualify counsel ultimately falls within the sound discretion of the trial court. See *Befekadu*, 339 Ga. App. at 807 (1).

(a) Samnick argues that the trial court erred in finding that Rich formed an attorney-client relationship with Goodman with respect to the commission issue and thus in concluding that Goodman was a former client of Rich. We disagree.

Although attorney-client relationships are typically matters of express contract, such a relationship can also be implied from the parties' conduct. And the employment of an attorney is sufficiently established when it is shown that the advice or assistance of the attorney is sought and received in matters pertinent to his profession. Additionally, while the payment of a fee is relevant to the inquiry and may in some circumstances be controlling, an attorney-client

10

relationship may be found to exist when no fee is paid, and the payment of a fee does not necessarily demonstrate the existence of the relationship. All that is necessary is a reasonable belief on the part of the would-be client that he or she was being represented by the attorney. A reasonable belief is one which is reasonably induced by representations or conduct on the part of the attorney.

(Footnotes and punctuation omitted.) *Estate of Nixon v. Barber*, 340 Ga. App. 103, 106 (1) (796 SE2d 489) (2017). See *Huddleston v. State*, 259 Ga. 45, 46-47 (1) (376 SE2d 683) (1989);*Cleveland Campers v. R. Thad McCormack, P. C.*, 280 Ga. App. 900, 903 (2) (635 SE2d 274) (2006).

Guided by these principles, we conclude that the trial court committed no error in finding that Rich formed an attorney-client relationship with Goodman for purposes of addressing the commission issue. Goodman testified that she consulted with Rich about the dispute over her final commission payment that she was having with her former employer and sought his advice about how to proceed, and, to that end, shared detailed information about her compensation plan and earnings with Rich in emails and private discussions. Goodman also introduced into evidence emails in which she forwarded to Rich communications from her former employer about the commission issue and documents that explained her commission structure and how

11

the commissions were to be determined, and in which she answered questions about her former employer and sought Rich's advice about how to handle the matter. Email evidence presented by Goodman also reflected that Rich agreed to look at the commission issue for Goodman and to provide her with his opinion, asked her a series of follow-up questions regarding her employment and the calculation of her commissions, advised her on Georgia law regarding electronic communications, and promised to write a letter to her former employer on her behalf and told her when he planned to write the letter.

Given this record, the trial court was authorized to find that Goodman sought and received professional legal advice from Rich about the commission issue, and that Rich's representations and conduct induced Goodman to reasonably believe that she was being represented by Rich with respect to that issue. And, while Rich in his affidavit described his interactions with Goodman differently and claimed that he never offered her advice, it was for the trial court, not this Court, to resolve conflicts in the testimony and evaluate witness credibility. See *WellStar Health System*, 324 Ga. App. at 635 (1) (b). Consequently, there was evidence to support a finding that an attorney-client relationship existed between Rich and Goodman under Georgia law. See *Estate of Nixon*, 340 Ga. App. at 106 (1) (noting that an attorney-client

12

relationship can be inferred from conduct and does not require payment of fee by client); *Calhoun v. Tapley*, 196 Ga. App. 318, 319 (395 SE2d 848) (1990) (evidence sufficient to find attorney-client relationship where attorney discussed the legal matter with the party and answered all of her questions, and the party received assurances from the attorney that he was handling the matter).

(b) Samnick further argues that even if Rich formed an attorney-client relationship with Goodman for purposes of addressing the commission issue, the trial court abused its discretion in determining that matters involved in the previous representation and the divorce action were substantially related so as to justify disqualification. Again, we disagree.

> As the party seeking disqualification, [Goodman] had the burden to demonstrate to the superior court that disqualification was warranted, and [she] had to do so by showing that the matters embraced within the pending suit are substantially related to the matters or the cause of action involved in the previous representation. To be "substantially related" for the purpose of assessing the need for disqualification means that the former case in which the lawyer was involved has both material as well as logical connections to the pending litigation[.]

(Citations and emphasis omitted.) *Cardinal Robotics v. Moody*, 287 Ga. 18, 21 (694 SE2d 346) (2010). See *Kamara v. Henson*, 340 Ga. App. 111, 113-114 (2) (796 SE2d

13

496) (2017). By way of example, "a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce." State Bar Rule 1.9 (a), cmt. 3.

Applying these principles to the present case, we conclude that the trial court acted within its discretion in finding that Goodman satisfied her burden of showing that matters involved in the prior representation and the pending divorce proceedings were substantially related. Goodman presented evidence that in seeking legal advice from Rich about the commission issue, she shared detailed financial information with him about her commission structure and earnings with her former employer, and such information would be pertinent to a determination of her earning capacity. See *Duncan v. Duncan*, 262 Ga. 872, 873 (1) (426 SE2d 857) (1993) (noting that "numerous factors must go into a determination of a party's earning capacity," including evidence of the "party's past income"). And, earning capacity may be considered by the trial court in determining the equitable distribution of marital property and debt, the amount of alimony, and the attorney fees awarded under OCGA § 19-6-2 in a divorce action. See *Klardie v. Klardie*, 287 Ga. 499, 503 (3) (697 SE2d 207) (2010) ("In certain domestic cases, earning capacity is an appropriate means to determine an award of attorney fees pursuant to OCGA § 19-6-2."); *Wier*

14

*v. Wier*, 287 Ga. 443, 444 (4) (696 SE2d 658) (2010) (trier of fact "may consider assets and earning capacity, in addition to income, in fixing the amount of alimony"); *Taylor v. Taylor*, 283 Ga. 63, 64 (1) (656 SE2d 828) (2008) (affirming trial court's decision as to how to equitably distribute retirement accounts based on, among other things, evidence of the wife's earning potential); *Duncan*, 262 Ga. at 873 (1) ("In certain circumstances, our case law has permitted earning capacity rather than gross income to be used to determine the amounts of alimony . . . and attorney fees to award in domestic cases."). Consequently, the trial court was authorized to exercise its discretion and find that matters addressed in Rich's prior representation of Goodman had both material and logical connections to matters involved in the pending divorce proceeding, such that the matters were substantially related.

It is true that "the mere fact that an attorney has general financial information about a former client does not necessarily warrant disqualification"; as we have pointed out, the former client is "still required to show a substantial relationship between the attorney's knowledge of her assets and the pending suit." (Citation, punctuation, and emphasis omitted.) *Benson v. McNutt*, 289 Ga. App. 565, 566 (657 SE2d 639) (2008). See *Duvall v. Bledsoe*, 274 Ga. App. 256, 259 (617 SE2d 601) (2005). However, as noted above, Goodman presented evidence that went beyond

15

showing that Rich simply had knowledge of general financial information about her; rather, she demonstrated that Rich had knowledge of specific information about her commission structure and earnings that bore a substantial relationship to issues being litigated in the divorce proceedings. Hence, this is not a case where the attorney was alleged to simply have acquired "general financial information" during the prior representation without a further showing of a substantial relationship between the prior and current matters. Compare *Benson*, 289 Ga. App. at 566 (former client failed to show that lawyer's general knowledge of her assets based on prior trust and estate work was substantially related to pending lawsuit in which it was alleged that she had misappropriated another's assets, where former client failed to present any evidence of "when . . . [the] prior representation occurred relative to the pending case or to specify information that counsel may have received"); *Duvall*, 274 Ga. App. at 259 (former client failed to show that lawyer's knowledge of his personal finances in connection with representation in prior divorce proceedings and a trust matter bore any substantial relation to the pending medical malpractice/wrongful death action).

Samnick asserts that because the commission that Goodman discussed with Rich was earned before the marriage, it constituted separate rather than marital property and thus was not substantially related to matters in dispute in the pending

16

divorce. But "a party's non-marital property is a factor that may be considered in assessing the equities of the division of marital property." *Payson v. Payson*, 274 Ga. 231, 233 (1) (b) (552 SE2d 839) (2001). Furthermore, Goodman's prior commissions were pertinent to the issue of her earnings capacity, which in turn was pertinent to the equitable distribution of property and the amount of alimony and attorney fees to be awarded in the divorce, as discussed supra.

Accordingly, for all of the aforementioned reasons, we conclude that the trial court did not abuse its discretion in determining that Rich's prior representation of Goodman was substantially related to the divorce proceedings and thus in disqualifying him from representing Samnick.

2. Samnick also contends that the trial court erred in disqualifying Rich based on his personal relationship with Goodman and on the court's finding that Rich was a necessary witness in the divorce proceedings. As discussed supra in Division 1, the trial court acted within its discretion in disqualifying Rich based on his former representation of Goodman in the dispute over her commission. Because "a ruling right for any reason must be affirmed," *In re Estate of Williams*, 241 Ga. App. 17, 17 (1) (525 SE2d 742) (1999), we need not reach Samnick's contentions raised in this division.

*Judgment affirmed. Gobeil, J., and Senior Appellate Judge Herbert E. Phipps concur.*