**THIRD DIVISION
DOYLE, P. J.,
DILLARD, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 28, 2021**

# In the Court of Appeals of Georgia

A20A1966. POTTS v. CLOWDIS.

DOYLE, Presiding Judge.

William G. Clowdis, Jr., sued James Hugh Potts, II, and James Hugh Potts, II, LLC (collectively "Potts"), in DeKalb County Superior Court, asserting a variety of claims, including legal malpractice and breach of fiduciary duty. After the trial court entered a default judgment as to liability and causation as a discovery abuse sanction, the case proceeded to a jury on damages, resulting in a verdict for $2,728,600 in general damages, $2,350,000 for loss of income, $485,000 in attorney fees, and punitive damages in the amount of $235,000. Potts appeals the judgment, the amended judgment, and the trial court's order denying his motions for judgment notwithstanding the verdict ("JNOV") and for new trial, arguing that the trial court erred (1) by granting the default judgment; (2) by failing to properly redact the

complaint; (3) by admitting and excluding certain evidence; (4) by denying the motion for JNOV as to attorney fees; and (5) by denying the motion for new trial. For the reasons that follow, we reverse.

> When reviewing a trial court's denial of a motion for JNOV or new trial, this Court determines if there is any evidence to support the jury's verdict. [If] a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motions for new trial and JNOV will not be disturbed.[1]

So viewed, the record shows that in 2007, the Virginia Medical Board ("the Board") suspended Clowdis's license to practice medicine and surgery based upon evidence that he had been convicted of a felony in Colorado. In 2011, the Board stayed Clowdis's suspension on the condition that he fully comply with certain

---

[1] (Punctuation omitted.) *Caldwell v. Church*, 353 Ga. App. 141, 142 (836 SE2d 594) (2019), quoting *Henry v. Jones*, 237 Ga. App. 385, 385-386 (1) (515 SE2d 199) (1999).

monitoring conditions. In 2013, following a hearing, the Board issued an order indefinitely suspending Clowdis's license based on violations of the 2011 monitoring order, but it provided for a stay of the suspension if Clowdis complied with the terms of the monitoring order.

Clowdis retained Potts to assist with litigating his medical license suspension and with other issues. At some point, Clowdis began working for Potts as a paralegal, and Clowdis applied for admission to the New York and Georgia Bars. After the relationship between the two soured, Clowdis filed a pro se complaint against Potts, asserting claims for interference with profession (Count 1); fraud (Count 2); breach of contract (Count 3); defamation (Count 4); intentional infliction of emotional distress (Count 5); breach of fiduciary duty/legal malpractice (Count 6); and malicious use and abuse of process (Count 7). The claims largely stem from Potts's alleged handling of Clowdis's legal issues regarding his medical license and misuse of confidential information to negatively impact Clowdis's bar applications.

Potts moved to dismiss Counts 1-5 and Count 7 of Clowdis's complaint for failure to state a claim upon which relief can be granted. The trial court granted the motion for various reasons, leaving only breach of fiduciary duty, "i.e., legal malpractice," remaining for adjudication. Thereafter, Clowdis moved to strike Potts's

3

answer, defenses, and counterclaims on the basis that he intentionally withheld documents requested in discovery, contending that they either did not exist, were destroyed by Clowdis, or were not in his possession. Clowdis further alleged that Potts asked many "irrelevant, harassing, . . . bizarre[,] and offensive" questions of witnesses during depositions. The trial court granted the motion, striking Potts's pleadings and awarding default judgment to Clowdis. The court also found that Potts filed a frivolous motion for protective order and was abusive during a deposition, which actions resulted in the imposition of attorney fees. Thus, the court concluded that Clowdis was "entitled to verdict and judgment by default as if every . . . paragraph of the [c]omplaint were supported by proper evidence, without the intervention of a jury. Liability is established. The damages, if any, to be awarded, will be heard by a jury. . . ." Potts sought immediate appellate review of the default judgment, but the trial court denied him a certificate of immediate review. Nevertheless, Potts filed a direct appeal of the default judgment, which this Court dismissed for lack of jurisdiction.[2]

---

[2] In the same direct appeal – Case No. A18A1020 – Potts attempted to appeal the trial court's attorney fee award against him; this Court concluded that the fee award was interlocutory and therefore not proper for immediate review. Potts has another appeal pending – Case No. A21A0727 – in which he appeals the trial court's appointment of a special master to handle post-judgment discovery in this case.

4

The case proceeded to a bifurcated jury trial on damages.[3] Thereafter, the trial court entered judgment against Potts in the following amounts: $2,728,600 in general damages, $2,350,000 for loss of income, $485,000 in attorney fees, and punitive damages in the amount of $235,000. Potts moved for a new trial or JNOV, and the trial court denied the motions. This appeal followed.

1. Potts contends that the trial court erred by granting Clowdis's motion for default judgment. We disagree.

> At the outset, we note that rulings on motions to strike and for entry of default judgment are reviewed by this Court using an abuse of discretion standard. Indeed, a trial judge has broad discretion in the enforcement of the discovery provisions of the Civil Practice Act, and we will not interfere with the exercise of that discretion absent clear abuse. . . . Nevertheless, dismissal and default are the harshest sanctions available for the trial court to impose, and we have cautioned against the use of these harsher sanctions except in extreme cases.[4]

---

[3] The first phase of the trial was on damages and whether Clowdis was entitled to punitive damages. After the jury determined that he was, the case proceeded to a second phase on the amount of punitive damages and whether there was specific intent to cause harm pursuant to OCGA § 51-12-5.1 (f).

[4] (Punctuation and footnotes omitted.) *Cameron v. Miles*, 311 Ga. App. 753, 754-755 (1) (716 SE2d 831) (2011).

Potts does not dispute the trial court's findings regarding his actions during discovery. Instead, he argues that default is an extreme sanction that cannot be invoked for discovery abuses if the evidence remains intact, citing *WellStar Health Systems v. Kemp*.[5] That case held that a trial court abused its discretion by striking the defendant's answer after its attorneys attempted to deter the plaintiff's expert witness from testifying, holding that because the lawyers' conduct did not result in the spoliation of evidence, striking the answer was not justified.[6] But this case is not a spoliation case. Instead, the trial court struck Potts's answer pursuant to OCGA § 9-11-37 (d), which authorizes a trial court to "take any action authorized under subparagraphs (b) (2) (A) through (b) (2) (C) of this Code section" if a party fails to respond to discovery.[7] OCGA § 9-11-37 (b) (2) (C) permits a trial court to strike pleadings as a discovery sanction. And this Court has held "that an intentionally false response to a document production request (particularly concerning a pivotal issue

---

[5] 324 Ga. App. 629, 639-640 (3) (751 SE2d 445) (2013).

[6] See id. at 639.

[7] See *MARTA v. Doe*, 292 Ga. App. 532, 535 (1) (664 SE2d 893) (2008).

6

in the litigation) authorizes a trial court to impose the sanctions permitted by OCGA § 9-11-37 (d) for a total failure to respond."[8]

Here, the trial court stated in the order striking Potts's answer:

Defendants' behavior in this case is the most egregious this [c]ourt has ever seen, and thus, the extreme sanction of entering default judgment for Plaintiff and dismissing Defendants' counterclaims is appropriate. Defendants f[l]agrantly abused the discovery process. Defendants willfully, falsely, and knowingly denied the existence of requested discoverable documents relating to pivotal issues in this litigation.

Specifically, the court noted that Potts failed to timely respond to discovery; engaged in "game playing"; attempted to "trick the [c]ourt or opposing counsel into thinking that [their] responses were timely"; "willfully misrepresented that [certain] documents were under seal as an explanation for not producing the discoverable documents"; intentionally withheld e-mails between the parties; and "repeatedly misrepresented

---

[8] Id. at 537 (1) ("An interrogatory answer that falsely denies the existence of discoverable information is not exactly equivalent to no response. It is *worse* than no response. When there is no response to an interrogatory or the response is devoid of content, the party serving the interrogatory at least knows that it has not received an answer. It can move the court for an order to compel a response. If the response is false, however, the party serving the interrogatory may never learn that it has not really received the answer to the interrogatory.") (punctuation omitted; emphasis in original).

to Clowdis the existence of [certain] documents for over a year" before attempting to use them to cross-examine Clowdis at his deposition" and finally tendering hundreds of documents to the court after representing that they did not exist.

Under these circumstances, the trial court was authorized to strike Potts's answer as a sanction for his intentionally false responses to discovery, the falsity of which Potts does not dispute.[9]

2. Potts also contends that the trial court erred by "under-redacting" the complaint, including by failing to strike allegations related to claims that were previously dismissed, and then sending it out with the jury early in the trial after instructing that the contents thereof could not be contested. We agree.

OCGA § 9-11-55 (a) provides in relevant part that when a case is in default, the plaintiff is "entitled to verdict and judgment . . . as if every item and paragraph of the complaint or other original pleading were supported by proper evidence."

> [A] default operates as an admission of the well-pled facts alleged in the
> complaint, but not the conclusions of law contained therein: A judgment
> by default properly entered against parties sui juris operates as an

---

[9] See id. See also *Resurgens, P.C. v. Elliott*, 301 Ga. 589, 597 (2) (a) (800 SE2d 580) (2017) (holding that "a trial court clearly has the discretion to impose Rule 37 (d) sanctions if it finds that the offending party has provided discovery responses which were false or deliberately misleading").

admission by the defendant of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration. *Conclusions of law and facts not well pleaded and forced inferences are not admitted by the default judgment.*[10]

Prior to trial, Potts filed a motion for the trial court to determine the well-pled factual allegations of the complaint along with the fair inferences and conclusions to be drawn from those allegations to determine which causes of action they supported. After a hearing, the trial court issued an order setting out the elements of a legal malpractice claim and a breach of fiduciary duty claim and concluded that the complaint "sets forth numerous well[-]pled facts that are specific and clear and meet the elements of both a legal malpractice claim and a breach of fiduciary duty claim." Having so found, the trial court declined "to analyze each and every numbered paragraph of the [c]omplaint" at that time, postponing a determination of which paragraphs could be read to the jury. Thereafter, the trial court entered a consolidated pretrial order, which included as an exhibit a copy of the complaint as redacted by the trial court to exclude anything other than well-pled allegations.

---

[10] (Punctuation omitted; emphasis supplied.) *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 498 (740 SE2d 413) (2013), quoting *Stroud v. Elias*, 247 Ga. 191, 193 (1) (275 SE2d 46) (1981).

Potts then filed numerous pretrial motions seeking, among other things, to exclude evidence of other acts unrelated to the claims remaining at issue. Following a hearing, the trial court entered an order, ruling that "[u]nrelated bad acts (meaning unrelated to the circumstances and transactions in this case between the parties) will be inadmissible unless upon a showing through a proffer at trial that they're relevant for some purpose to the claim that remain[s] in the case."

Early in the trial, the court allowed the redacted complaint to go out with the jury and remain with them throughout the trial. The introduction to the 75-page redacted complaint includes a laundry list of all of the claims alleged by Clowdis, including those dismissed prior to trial (e.g., interference with profession; fraud; breach of contract; defamation; intentional infliction of emotional distress; and malicious use and abuse of process), and it states that "[t]hese acts were committed by . . . and . . . on behalf of Potts." In addition, the named headings for those claims were left in throughout the redacted complaint. The redacted complaint also includes an assertion that Clowdis "is entitled to recover damages, including punitive

10

damages, determined by this [c]ourt to have been sustained by him on account of Defendants' violations as outlined above," and it contained legal conclusions.[11]

During the trial, the court instructed the jury that it had

> previously made a determination that each and every one of the well-pled facts of the complaint, which you've received into evidence . . . are true. And therefore[,] Defendants' liability and causation for claims by the Plaintiff were breached [sic] of fiduciary duties and legal malpractice as against the Defendants . . are already established by the [c]ourt. All you are to decide is whether the Plaintiff was damaged by the Defendants, and if so, the amount of Plaintiff's damages, if any. Any witness testimony contrary to this instruction should be disregarded and should not be considered by you. It will not and should not be part of your discussions as jurors in the jury room at the conclusion of this case when you deliberate. And you will not use it in any way in determining whether the Plaintiff was damaged . . . and the amount of Plaintiff's damages, if any.

During its opening instructions to the jury, the trial court did not specify the claims that the jury was charged with deciding. During the closing jury instructions, the trial court gave the pattern charges, including those related to damages and evidence.

---

[11] For example, in the portion of the redacted complaint entitled "Fraud," Clowdis alleged that Potts made false representations to Clowdis about his status at Potts's law firm and that a promotion to "business partner" was "an immediate contractual obligation, with consideration given on both sides."

Although the only two claims defined for the jury were breach of fiduciary duty and legal malpractice, the court did not instruct the jurors during the charge that those were the only claims for which it could award damages. The verdict form did not list Clowdis's claims, and instead simply gave the options of (1) finding in favor of Clowdis but awarding no damages, or (2) finding in favor of Clowdis and awarding general damages, loss of earnings, and attorney fees.[12]

Under these circumstances, we cannot foreclose the possibility that admission of the redacted complaint (including the headings enumerating claims that were not before the jury), along with an instruction by the court that the contents thereof could not be contested by Potts, resulted in a verdict that included damages for dismissed claims, or at the very least, that the amount of the verdict was improperly impacted

---

[12] The verdict form also asked the jury to determine whether Clowdis was entitled to punitive damages.

by those portions of the complaint related to dismissed claims.[13] Accordingly, we reverse.

3. In light of our holding in Division 2, we decline to address Potts's remaining enumerations of error, which may not occur on retrial.

*Judgment reversed. Dillard, P. J., and Hodges, J., concur*.

---

[13] Compare *Miller Distrib. Co. v. Rollins*, 163 Ga. App. 635, 637 (3) (295 SE2d 187) (1982) (finding no error in allowing complaint containing a withdrawn allegation to go out with the jury because the jury was instructed that the claim had been withdrawn); *B. S. Sanders & Assoc., Inc. v. Castellow*, 154 Ga. App. 433, 435 (2) (268 SE2d 695) (1980) (finding no error in allowing complaint that contained withdrawn claims to go out with the jury because the judge did not instruct the jury on the withdrawn claims, "the verdict returned obviously did not include any recovery for such claims," and the jury was instructed that the parties' claims were not evidence).